UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE T. WALTERS, | ) 1:11-cv—00550-SKO-HC |
| | ) |
| Petitioner, | ) ORDER DENYING THE PETITION FOR |
| | ) WRIT OF HABEAS CORPUS (DOC. 1) |
| | ) |
| v. | ) ORDER DIRECTING THE CLERK TO |
| | ) ENTER JUDGMENT FOR RESPONDENT |
| MICHAEL L. BENOV, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on April 21, 2011, and on behalf of Respondent on June 7, 2011. Pending before the Court is the petition, which was filed on April 4, 2011. Respondent answered the petition on June 17, 2011; Petitioner filed a traverse and memorandum on June 30, 2011.

1

I. <u>Jurisdiction</u>

    A. <u>Subject Matter Jurisdiction</u>

Petitioner alleged in the petition that he was an inmate of the Taft Correctional Institution (TCI) located at Taft, California, serving a sentence of 188 months. (Pet. 2.) Petitioner alleges that the staff of the Bureau of Prisons (BOP) have failed to include good conduct time credit in computing his eligibility for the Elderly Offender Home Detention Pilot Program (the program), which permits placement of elderly offenders on home detention on a trial basis if the offender is sixty-five years of age and has served the greater of ten years or seventy-five percent of the term of imprisonment imposed. 42 U.S.C. § 17541(g)(5)(A)(i)-(ii). Petitioner seeks the credit to which he believes he is entitled in connection with the determination of his eligibility.

Respondent argues that the Court does not have jurisdiction over the present controversy because Petitioner does not challenge the fact or duration of his confinement, and even if relief were granted, it would not shorten his period of confinement. Respondent relies on <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976), a civil rights proceeding pursuant to 42 U.S.C. § 1983 in which it was held that an administrative, non-disciplinary transfer of an inmate to another prison did not affect a liberty interest of the prisoner that was protected by the Due Process Clause. Respondent also relies on <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1103 (9th Cir. 1986), <u>abrogated on other grounds</u> by <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), an action pursuant to § 1983 in which the appellate court reviewed

2

an injunction requiring release of prisoners from administrative segregation.  In Toussaint, the defendants argued that the district court lacked jurisdiction under § 1983 to order prisoners released from administrative segregation because 28 U.S.C. § 2254 was the exclusive federal remedy for a prisoner challenging conditions of confinement.  Defendants relied on Preiser v. Rodriguez, 411 U.S. 475 (1973), where inmates sought injunctive relief to compel restoration of lost time credits, and where the Court found that habeas corpus relief was the sole remedy for challenges to the very fact or duration of physical imprisonment accompanied by prayers for immediate or speedier release from imprisonment.  In Toussaint, no actual restoration of time credit was part of the injunctive relief ordered, so the injunction ordering release from administrative segregation was held not to have exceeded the court's jurisdiction.  801 F.2d at 1103.

    Here, Petitioner's challenge concerns application of a statute which authorizes the Attorney General to conduct a pilot program involving "removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced."  42 U.S.C. § 17541(g)(1)(A).  The program authorizes the Attorney General to "release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention."  § 17541(g)(1)(B).  Thus, the program expressly relates not to release from confinement, but rather to placement during the service of a prison term, a matter involving the manner of execution of Petitioner's sentence.

3

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who challenges the validity or constitutionality of his conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

In describing the claims that are permitted to be raised in a motion pursuant to the section, 28 U.S.C. § 2255 refers to a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released...." Thus, the statute authorizing challenges to the sentence expressly requires that a petitioner proceeding pursuant to § 2255 claim a right to release. In contrast, § 2241 contains no such requirement.

Respondent correctly notes that the "core" of habeas corpus relief in cases pursuant to 28 U.S.C. § 2254 has been identified as involving challenges to the fact or duration of confinement. However, Respondent has not cited any Supreme Court authority that requires a claim to relate to the fact or duration of confinement in order for a court to have jurisdiction pursuant to § 2241. The Supreme Court has acknowledged generally in a case pursuant to § 2254 that habeas corpus may be available to challenge prison conditions when a prisoner is put under additional and unconstitutional restraints during lawful custody,

and it has noted that habeas corpus has been available to address a claim that a prisoner is unlawfully confined in the wrong institution.  Preiser v. Rodriguez, 411 U.S. 475, 499, 486.

Likewise, this circuit has held that the habeas remedy pursuant to § 2241 is available for claims that do not involve the fact or duration of confinement, but rather concern the manner of execution of a sentence.  See, Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008) (a statutory challenge to the BOP's failure to transfer an inmate to a residential reentry center was considered pursuant to § 2241 without a discussion of jurisdiction); United States v. Lemoine, 546 F.3d 1042 (9th Cir. 2008) (a challenge on constitutional and statutory grounds to the BOP's requirement that an inmate pay restitution at a higher rate than the sentencing court had ordered was considered pursuant to § 2241 without a discussion of jurisdiction); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549-50 (9th Cir. 1998) (a challenge on constitutional and statutory grounds to the BOP's program for determining the amount and timing of payment by inmates of court-ordered fines was considered pursuant to § 2241 without a discussion of jurisdiction).

In Foster v. Washington-Adduci, no. CV 09-07987-PSG (DTB), 2010 WL 1734916, *3-*4 (C.D.Cal. March 24, 2010), the court relied on the foregoing authorities in concluding that a district court has jurisdiction pursuant to § 2241 to consider a claim concerning the program at issue in the present case.  The reasoning of the court is persuasive.  Accordingly, this Court has jurisdiction over the subject matter of the petition.

///

B.  <u>Jurisdiction over the Respondent</u>

For a federal court to have jurisdiction over a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, the Petitioner must name his custodian as a respondent; a failure to name and serve the custodian deprives the Court of personal jurisdiction. <u>Johnson v. Reilly</u>, 349 F.3d 1149, 1153 (9th Cir. 2003). The local custodian, or warden of the penitentiary where a prisoner is confined, constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. <u>Id.</u>; <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 446-47 (2004).

Here, Petitioner has named as Respondent the warden of the correctional institution in which he was confined at the time the petition was filed. Petitioner's subsequent transfer to a federal correctional institution in Oregon does not affect the Court's jurisdiction over the person of the Respondent because it is sufficient if the custodian is in the territorial jurisdiction of the Court at the time the petition was filed. Transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established. <u>Ahrens v. Clark</u>, 335 U.S. 188, 193 (1948), overruled on other grounds in <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. at 193 (citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944)); <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).

Accordingly, the Court has jurisdiction over the person of the Respondent.

II.  <u>Mootness</u>

Respondent refers to the expiration of the program on

September 30, 2010.  (Resp. 7:24-27.)  However, Respondent does not provide any declaration or other documentation of the status of the program.

Petitioner alleges that the program did not end on September 30, 2010, but rather was extended to February 5, 2011, was nevertheless still in existence, but simply was not accepting any more elderly offenders. (Pet. 6.)  In support of this allegation, Petitioner submitted a request to staff made in April 2011 regarding the program.  The staff stated that according to the program operational memorandum of February 5, 2009, the expiration date for the program was February 5, 2011; there were no additional guidelines concerning the program as to whether it was extended, and the program was no longer offered "at this time."

Federal courts lack jurisdiction to decide cases that are moot because the courts' constitutional authority extends to only actual cases or controversies.  Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70-71 (1983).  Article III requires a case or controversy in which a litigant has a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings and has suffered some actual injury that can be redressed by a favorable judicial decision.  Id.  A petition for writ of habeas corpus becomes moot when it no longer presents a case or controversy under Article III, § 2 of the Constitution. Wilson v. Terhune, 319 F.3d 477, 479 (9th Cir. 2003).  A petition for writ of habeas corpus is moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus.  Burnett v. Lampert, 432 F.3d

7

996, 1000-01 (9th Cir. 2005) (quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998)).  Mootness is jurisdictional.  <u>See</u>, <u>Cole v. Oroville Union High School District</u>, 228 F.3d 1092, 1098-99 (9th Cir. 2000).  Thus, a moot petition must be dismissed because nothing remains before the Court to be remedied.  <u>Spencer v. Kemna</u>, 523 U.S. 1, 18 (1998).

Here, the Respondent did not make a formal motion to dismiss the petition on the grounds of mootness and did not submit documentation sufficient to determine the status of the program. The representation in the response concerning the date the program terminated conflicts with the statement of a member of the correctional staff in the document submitted by Petitioner. The record before the Court concerning the status of the program shows one extension of the program[1] and a cessation, of unknown duration, of acceptance of further offenders.  The extent and reliability of the knowledge of the correctional staff making the statement concerning the status of the program is unclear. Although "new" elderly offenders might not be accepted, it is not clear that the program has been terminated so as to prevent this Court from ordering effective relief with respect to Petitioner, whose application for the program was pending long before the revised date of the expiration of the program.  The record suggests, and does not foreclose, the possibility that some elderly offenders who have been previously accepted into the program are still serving terms of imprisonment in home detention

---

[1] Originally the program was to operate from April 9, 2008 (the date of enactment of the statute creating it), through fiscal year 2010.  42 U.S.C. § 17541(g)(3).

8

pursuant to a determination such as the one Petitioner challenges in this petition.

Considering the state of the record, the Court concludes that it has not been demonstrated that the controversy is moot.

III. <u>Background</u>

Petitioner was sentenced to 188 months on May 10, 2001. (Ans., Ex. 5.) Petitioner arrived at TCI on July 20, 2001. He was given 288 days of jail credit from May 18, 1999 to June 21, 1999, and from August 30, 2000, to May 9, 2001. (Ans., Ex. 1, doc. 14-1, 5.)

Petitioner sought review of his eligibility for the program. On or about November 6, 2010, Petitioner filed a request for an administrative remedy in which he alleged that in calculating the extent of his service of his sentence, records staff had failed to credit him with 533 days of good conduct time (GCT) to which Petitioner claimed entitlement pursuant to 18 U.S.C. § 3624(b). Petitioner argued that his credit was vested, and that pursuant to § 3624, he was entitled to his credit as of the end of each year. (<u>Id.</u>, doc. 14-1, 6.) Petitioner alleged that he had served 10.25 years of his term; 141 months was seventy-five percent of the 188 months of his sentence; he had served 3,745 days; he was entitled to 553 days of conduct credit pursuant to § 3624(b); and thus, his total days served were 4298.5 days, which exceeded 4,292 days, or seventy-five percent of his term. Therefore, he was eligible for the program.

However, BOP staff determined that Petitioner had not yet served seventy-five per cent of his sentence of 188 months. (Doc. 14-1, 15-18.) This was done by taking the length of the

9

sentence imposed, 188 months, and then calculating seventy-five (75) percent of the sentence, which was 141 months, a period that was greater than ten years. Petitioner would thus be required to serve seventy-five per cent of the sentence, which was at least 141 months, or over eleven (11) years. (Doc. 14-1, 27.) Petitioner had begun serving his sentence in 2001, and he had served roughly nine (9) years and six (6) months as of November 2010. He had received only 288 days, or less than ten months, of jail credit. No GTC was factored into the calculation.

It thus appears that Petitioner could not have served over eleven (11) years of his term of imprisonment as of the time of the calculations in question.

The BOP followed an operations memorandum of February 5, 2009 concerning the program, as well as 18 U.S.C. § 3624(b) and Program Statement 5880.28 concerning sentence computation. Pursuant to those authorities, prior custody credit was calculated as time spent in service of a sentence, but GCT was not. (Doc. 14-1, 26.)

IV. The Eligibility Calculation

Title 42 U.S.C. § 17541(g)(1)(A), the governing statute concerning the program, provides in pertinent part:

> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.

Section 17541(g)(5)(A)(ii) provides that an "eligible elderly offender" is one who "has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was

10

sentenced." "Term of imprisonment" is defined to include "multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment...." § 17541(g)(5)(C). It is not otherwise defined in the statute.

In reviewing how an agency, such as the BOP, has construed a statute it is charged with administering, a reviewing court will first consider the text of the statute. Contract Management, Inc. v. Rumsfeld, 434 F.3d 1145, 1146 (9th Cir. 2006). "'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Contract Management, 434 F.3d at 1146-47 (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 476 U.S. 837, 842-43 (1984)).

The plain meaning of "term of imprisonment to which the offender was sentenced" is the amount of time the sentencing court directed that Petitioner serve as punishment for his offense. The statute unambiguously refers to "term of imprisonment" in the context of the term announced at sentencing, and the phrase "to which the offender was sentenced" clearly modifies the immediately preceding phrase, "term of imprisonment." This being so, the term would logically not include any GCT. Accord, Izzo v. Wiley, 620 F.3d 1257, 1259-60 (10th Cir. 2010).

Petitioner argues that with respect to calculation of both the initial term of imprisonment and the portion of the term served, his GCT should be included. He bases his argument in part on 18 U.S.C. § 3624(b), which provides as follows:

> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.
>
> (2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

18 U.S.C. § 3624(b)(1), (2).

However, in Barber v. Thomas, 620 F.3d 1257, 130 S.Ct. 2499, 2506 (2010), the Court interpreted the phrase "term of imprisonment of more than 1 year" as it first appears in § 3624(b)(1) as a reference to the sentence imposed, not the time actually served. Based on the later appearance of the term with modifiers "at the end of each year" and "during that year," however, the Court held that calculation of actual GCT was to be based on time actually served, and not on the sentence imposed. Id. at 2504-2511.

Thus, contrary to Petitioner's position, there is no apparent inconsistency between the BOP's interpretation of

1 § 17541 and the Court's holding in Barber v. Thomas.

2 In Izzo v. Wiley, 620 F.3d 1257, 1259-60 (10th Cir. 2010), the petitioner argued that in light of 18 U.S.C. § 3624(b), which permits a prisoner to receive GTC in an amount of up to fifty-four (54) days per year, the BOP should include GTC in the calculation of the initial term of imprisonment pursuant to § 17541.  The court noted that the pertinent BOP operations memorandum of February 5, 2009, expressly defined the phrase "term of imprisonment to which the offender was sentenced" to refer to the "term of imprisonment imposed by the sentencing court(s), whether stated in days, months, or years." Id. at 1259.  The court rejected the argument that the rule of lenity should be applied to interpret the phrase because the use of the phrase "term of imprisonment" was unambiguous.

With respect to Petitioner's argument that his GCT should be considered in determining the extent of his service of his term of imprisonment, the statute again unambiguously refers to an offender who "has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." (Emphasis added.)  The terms of the statute provide no basis to conclude that anything other than straight service of the requisite portion of the term was intended.

In summary, Petitioner has not shown that the BOP erred in calculating the service of his term.  Accordingly, the BOP's determination concerning Petitioner's eligibility for the program did not contravene federal law.  Petitioner has not shown that he is entitled to a writ of habeas corpus.

///

V. <u>Transfer</u>

Petitioner's request for inclusion in the program was essentially a request for a transfer to home detention.[2]

A prisoner generally does not have a constitutional right to be housed at a particular institution or to receive a particular security classification. <u>Neal v. Shimoda</u>, 131 F.3d 818, 828 (9th Cir. 1997) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976), and <u>Moody v. Daggett</u>, 429 U.S. 78, 87 n.9 (1976)).

Further, the BOP is authorized by statute to designate a federal prisoner's place of imprisonment and place him in any available penal or correctional facility that it determines to be appropriate and suitable considering specified criteria and to meet minimum standards of health and habitability established by the Bureau. 18 U.S.C. § 3621(b). In the absence of arbitrary and capricious conduct, the BOP "may at any time, having regard for the same matters," direct the transfer of a prisoner from one penal or correctional facility to another. <u>Id.</u>; see, <u>United States v. Myers</u>, 451 F.2d 402, 404 n.3 (9th Cir. 1972) (interpreting 18 U.S.C. § 4082, which authorized the Attorney General to designate the place of confinement, and noting that such authority had been delegated by regulation to the BOP).

---

[2] In the traverse, Petitioner requests transfer to TCI from his present location in Sheridan, Oregon, because his elderly family members are unable to visit him at such a distance and because he would like to take the Volunteer RDAP-Camp Program at TCI. To the extent that Petitioner is seeking a transfer on these grounds, it does not appear that Petitioner has exhausted his administrative remedies. Further, it is improper to raise substantively new issues or claims in a traverse, and a court may decline to consider such matters; in order to raise new issues, a petitioner must obtain leave to file an amended petition or additional statement of grounds. <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994). The Court will not consider the matters raised for the first time in Petitioner's traverse.

Petitioner has not alleged or shown that his placement in a prison, as distinct from home detention, either violated any constitutional or statutory provision or was arbitrary and capricious. Thus, Petitioner has not shown that his placement has entitled him to habeas corpus relief.

VI. Disposition

Accordingly, it is ORDERED that:

1) The petition for writ of habeas corpus is DENIED; and

2) The Clerk is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:     August 29, 2011**                    /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE